UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



———————————————————————

JOHN EDWARD HARRIS JR.,

     Plaintiff,

    v.                                 25-CV-1292 (JLS)

CITY OF AMHERST,
AMHERST POLICE DEPARTMENT,
ERIE COUNTY SHERIFF'S OFFICE,
OFFICERS 021 COWNIE, 024
MURPHY, 073 WESTRBROOK, 095
WISNIEWSKI, SUPERVISOR 408
HULLER, and
JOHN DOES 1-10,

     Defendants.

———————————————————————

## DECISION AND ORDER

*Pro se* Plaintiff, John Edward Harris Jr., commenced this action seeking relief under 42 U.S.C. § 1983. Dkt. 1. He alleges his Fourth, Fifth, and Fourteenth Amendment rights were violated when he was arrested and detained on August 22, 2022 for non-criminal traffic violations. *Id.*

Harris seeks permission to proceed *in forma pauperis* ("IFP"). Dkt. 2. Because Harris meets the requirements of 28 U.S.C. § 1915(a), he is granted permission to proceed IFP. The Court therefore screens his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

For the reasons below, Harris's claims against the Amherst Police Department and Erie County Sheriff's Office are dismissed without leave to amend.

His remaining claims are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, but with leave to amend.

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review Under the IFP Statutes

A court shall dismiss a complaint in a civil action in which an individual proceeding IFP seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

### B.    Pleading Standards

In evaluating a complaint, the court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Scott Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## C.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

## D.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however

4

unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

## II.   PLAINTIFF'S ALLEGATIONS

A liberal reading of the complaint tells the following story. On August 22, 2022, at approximately 4:05 p.m., Officers Cownie, Murphy, Westbrook, and Wisniewski stopped Harris and cited him with various "non-criminal traffic infractions." Dkt. 1 at ¶¶ 2-3. The officers "alleged AUO 2nd [aggravated unlicensed operation in the second degree] based on multiple 'failure[s] to answer summons' suspensions[,]" but Harris "never received lawful notice of ANY suspension[.]" *Id.* at ¶ 4 (emphasis in original).

Harris was "seized, handcuffed, searched, transported, fingerprinted, photographed, booked, and jailed without ANY judicial hearing or probable cause review." *Id.* at ¶ 5 (emphasis in original). Harris was processed into the Erie County Holding Center despite having no criminal charges. *Id.* at ¶ 6. Harris was not given "rapid judicial review" as required and was fingerprinted, even though he was not charged "with a fingerprint-eligible crime." *Id.* at ¶¶ 7-8. In doing so,

5

Defendants, including Huller as supervisor, "acted with deliberate indifference, reckless disregard, and malicious intent." *Id.* at ¶ 9.

Harris alleges violations of his Fourth, Fifth, and Fourteenth Amendment rights and lists the following claims: false arrest, false imprisonment, unlawful seizure, due process violations, illegal fingerprinting and biometric collection, municipal liability (Monell), and malicious abuse of process. *Id.* at 1, 2. He seeks compensatory damages in the amount of $1.5 million, punitive damages of $3 million, expungement of all biometric and arrest records, injunctive relief preventing future misconduct, and attorney's fees and costs. *Id.* at 3.

## III. ANALYSIS

### A. Timeliness

Harris's Section 1983 claims must be dismissed because they are time-barred. Because "Section 1983 does not provide a specific statute of limitations . . . courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing, *inter alia, Owens v. Okure*, 488 U.S. 235, 249-51 (1989)). Accordingly, "in New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023) (citing *Lucente v. County of Suffolk*, 980 F.3d 284, 308) (2d Cir. 2020)).

Federal law, however, determines the date a claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Sakon v. Johnson*, No. 24-1991, 2026 WL

6

445547, at *1 (2d Cir. Feb. 17, 2026) (summary order) ("In other words, federal law determines when the clock starts running, while state law decides when the buzzer sounds."). Generally, a Section 1983 claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citation modified).

It is not clear from the Complaint when—if ever—Harris was arraigned, how long he was detained at Erie County Holding Center, or what the ultimate outcome of his arrest and any charges were. His arrest date—August 22, 2022—is the only date referenced in the complaint.

With only the allegations in the complaint and no additional information, the Court presumes that Harris knew, or had reason to know of, the injuries that underly his claims on or close to August 22, 2022. The statute of limitations for those claims therefore began to run on or around August 22, 2022—meaning that the statute of limitations expired three years later, on or around August 22, 2025. Harris filed the complaint on December 2, 2025. Accordingly, his claims appear to be time barred.[1]

---

[1] Harris, moreover, fails to present facts to support any tolling of the limitations period. Federal courts apply the relevant state's rules for tolling the limitations period unless they are "inconsistent" with federal law. *DiBenedetto v. Coley*, No. 24-1029-CV, 2024 WL 4662979, at *1 (2d Cir. Nov. 4, 2024) (citing *Bd. of Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478, 486-87 (1980)); *see* N.Y. C.P.L.R. §§ 206-209 (setting forth statutory bases for tolling statute of limitations); *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (setting forth criteria for equitable tolling of statute of limitations: "(1) that [the plaintiff] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.").

Harris's claims are dismissed based on untimeliness, but with leave to amend to demonstrate that they are timely or that tolling is appropriate. The Court, however, has screened the Complaint for other grounds for dismissal.

## B.    *Monell* and Municipal Liability

### 1. Non-suable Entities

Under "New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). A police department is considered an administrative arm of the municipality and, therefore, "is not subject to suit under [Section] 1983." *Martinez v. Queens Cty. Dist. Atty.*, No. 12-CV-06262 (RRM) (RER), 2014 WL 1011054, at *16 (E.D.N.Y. Mar. 17, 2014) (municipal police department), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *Sanchez-Martin v. Allegany Cnty. Jail*, No. 11-CV-0568M, 2012 WL 360014, at *2 (W.D.N.Y. Feb. 1, 2012) (county jails).

The claims against the Amherst Police Department and Erie County Sheriff's Office are dismissed because they are administrative arms of the Town of Amherst and Erie County, respectively, and are not suable entities. *See Wekenmann v. Erie Cnty. Sheriff's Off.*, No. 1:19-CV-1572, 2021 WL 22540, at *1 (W.D.N.Y. Jan. 4, 2021) ("The Erie County Sheriff's Office is an administrative subdivision of Erie County. It is not subject to suit in its own capacity."); *Tulloch v. Erie Cnty. Holding Ctr.*, No. 10-CV-0207S, 2010 WL 2609054, at *2 (W.D.N.Y. June 24, 2010) (finding that "[t]he claims against the Erie County Holding Center must be dismissed

8

because . . . the Erie County Holding Center is merely an arm of the County [] and does not have a legal identity separate and apart from the County and thus cannot be sued"). Accordingly, Harris's claims against the Amherst Police Department and Erie County Sheriff's Office are dismissed without leave to amend. *See Sathue v. Niagara City Police Dep't*, No. 17-CV-747-FPG, 2018 WL 550520, at *4 (W.D.N.Y. Jan. 25, 2018) (dismissing claims against the Niagara Falls Police Department and Niagara County Sheriff's Office as legally frivolous).

### 2. Official Capacity Claims and Claims against Municipalities

Harris has not specified whether he sues the individual Defendants in their individual or official capacities. Because a *pro se* plaintiff "should not have the [C]omplaint automatically construed as focusing on one capacity to the exclusion of the other," the Court construes the claims as brought in both capacities. *See Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993).

A "suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

The individual Defendants are alleged to be employed either by the Erie County Sheriff's Office or the Town of Amherst. Official capacity claims against these Defendants are equivalent to a suit against the municipal entities themselves. *See Graham*, 473 U.S. at 165-66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an

9

agent.'" (quoting *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978))); *see LaFever v. Clarke*, 525 F. Supp. 3d 305, 338 (N.D.N.Y. 2021) ("To the extent that [the plaintiff] intended to sue [the] Sheriff . . . in his official capacity, the Supreme Court has explained that this kind of claim is 'to be treated as a suit against the entity'; *i.e.*, the County itself." (emphasis omitted) (quoting *Graham*, 473 U.S. at 165-66).

Although municipalities are considered "persons" for purposes of Section 1983, a local government may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell*, 436 U.S. at 694. To hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

> An official policy or custom can be established by showing:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York*, No. 22-CV-5656 (LDH), 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (collecting cases).

10

Harris does not contend that any of the alleged constitutional deprivations were caused by, or occurred pursuant to, an official custom or policy of Erie County or the Town of Amherst. Thus, the Complaint does not allege plausibly municipal liability, and the claims against the Town of Amherst, Erie County, and the individual Defendants in their official capacities are dismissed. Because Harris is proceeding *pro se*, he is granted leave to amend this claim to allege facts, if they exist, that the constitutional violations alleged were caused by a policy or custom of the Town of Amherst and/or County of Erie.

## C.    Fourth Amendment Claims

### 1. Traffic Stop - Unlawful Seizure Claim

Because "it constitutes a seizure for Fourth Amendment purposes, a traffic stop must satisfy the Fourth Amendment's reasonableness limitation"—meaning that "an officer making a traffic stop [must] have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *Forbes v. City of Rochester*, 612 F. Supp. 3d 159, 169 (W.D.N.Y. 2020) (quoting *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017)). A "law enforcement officer may initiate a 'stop' based upon 'a reasonable suspicion of criminal activity supported by specific and articulable facts.'" *Id.* (quoting *United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015)). Even a "minor" traffic violation may constitute a "specific and articulable fact" sufficient to provide probable cause or justification for the stop. *United States v. Scopo,* 19 F.3d 777, 781-82 (2d Cir. 1994); *see United States v. Stewart,* 551 F.3d

187, 193 (2d Cir. 2009) (holding "unambiguously that the reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop.").

The temporary seizure of a person "associated with the tasks tied to the issuance of a summons for a traffic violation . . . is analogous of a *Terry* stop" and is not unreasonable "so long as the seizure lasts 'no longer than is necessary to effectuate' the purpose of the traffic stop." *Esparza v. City of New York*, No. 25CV3815 (DLC), 2026 WL 654713, at *2 (S.D.N.Y. Mar. 6, 2026) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)).

Harris does not allege that the traffic stop itself was unlawful or that the officers lacked reasonable suspicion or probable cause to stop him in the first place. Nor does he allege that the stop was needlessly prolonged. Moreover, Harris lists a number of traffic infractions—including lack of a license plate—that, if observed by the officers, would provide officers with probable cause to stop Harris's vehicle. *See, e.g., United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) (finding "no error in the District Court's determination that the initial basis for the stop of the SUV was valid because the officers reasonably believed that the SUV lacked license plates.").

To the extent Harris asserts an unlawful seizure claim based on the traffic stop itself, that claims fails and is dismissed with leave to amend.

### 2. False Arrest / False Imprisonment Claim

A false arrest claim under Section 1983 "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest

12

without probable cause." *Savarese v. City of New York*, 547 F. Supp. 3d 305, 324 (S.D.N.Y. 2021) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

Courts "generally look to the law of the state in which the arrest occurred to determine the elements of a [Section] 1983 claim for false arrest." *Alberty v. Hunter*, 144 F.4th 408, 414-15 (2d Cir. 2025) (citation modified). A "claim for false arrest is equivalent to a claim for false imprisonment, with the same analysis applied to both claims." *Saheed v. City of New York*, No. 17 CIV. 1813 (KPF), 2020 WL 1644006, at *8 (S.D.N.Y. Apr. 2, 2020) (citing *Posr* v. *Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.")).

To "establish a false arrest claim under New York law, a plaintiff must allege that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (citation modified).

Probable cause "to arrest the plaintiff for *any* crime is a complete defense, 'whether or not that particular crime was closely related to the offense the officers said was the reason for arrest.'" *Peterkin v. Carr*, No. 24-1148-CV, 2025 WL 3181863, at *1 (2d Cir. Nov. 14, 2025) (summary order) (quoting *Kee v. City of New York*, 12 F.4th 150, 158-59 (2d Cir. 2021)). Probable cause exists when a law enforcement officer "has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable

13

caution in the belief that an offense has been or is being committed by the person to be arrested." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008)).

Even liberally construed, these allegations do not give rise to a false arrest or false imprisonment claim that can survive screening. Harris does not contest most of the cited infractions as false or unfounded—he merely alleges that they are not criminal. But probable cause for traffic infractions and offenses may provide a defense for a false arrest claim. *See Carruthers*, 153 F.4th at 180 ("[B]ecause the traffic infraction was an arrestable offense and Carruthers's guilty plea to that infraction demonstrates that probable cause existed to arrest him for that infraction, the false arrest claim fails as a matter of law."); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"); *Burdick v. Oswego County*, No. 5:12-CV-1711(NAM)(DEP), 2014 WL 12781320, at *8 (N.D.N.Y. Mar. 31, 2014) ("Operation of a vehicle while license is suspended, 3d degree, is a misdemeanor, *see* N.Y. Veh. & Traf. L. 511(1)(b); thus, Deputy Darling had probable cause to arrest plaintiff.").

Harris challenges his arrest on the charge of aggravated unlicensed operation in the second degree—a misdemeanor, *see* N.Y. Veh. & Traf. L. § 511(1)(b)—due to multiple "failure to answer summons" suspensions because Harris did not receive awful notice of any suspension. Dkt. 1 at ¶ 4. Even crediting Harris's allegation

14

regarding lack of notice, Harris has not alleged that the officers who arrested him were aware, or reasonably should have been aware, that Harris did not receive proper lawful notice. *Accord McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) (summary order) (explaining that "a police officer, upon ascertaining from a DMV check that a motorist's license has been suspended, is not required to make further inquiry" and has "probable cause to arrest" the motorist). Nor does Harris allege that he verbally alerted the officers to any lack of notice or other evidence that would undermine their assessment of probable cause.

Accordingly, without more, Harris has not alleged that his confinement was privileged and therefore has not plausibly alleged a false arrest claim. This claim is dismissed with leave to amend.[2]

### 3. Fingerprinting and Biometric Collection

To the extent that Harris asserts a Fourth Amendment claim based on warrantless or illegal fingerprinting and other biometric collection, the claim must be dismissed.

It is "well established that "the Fourth Amendment allows police to take certain routine administrative steps incident to arrest—*i.e.*, booking,

---

[2] Harris's false arrest and other Fourth Amendment claims ultimately may be barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a plaintiff's civil rights claim must be dismissed if a judgment for the plaintiff "would necessarily imply the invalidity of his conviction." *Id.* at 487. *See Bowers v. Kelly*, No. 13-CV-6265 (LGS), 2015 WL 2061582, at *3-4 (S.D.N.Y. May 4, 2015) ("The *Heck* rule applies whether the conviction resulted from a verdict at trial or a plea." (citing *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (en banc))). It is not clear, at this time, whether Harris's Fourth Amendment claims would directly implicate any prior conviction.

15

photographing, and fingerprinting." *Hays v. City of New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *3 (S.D.N.Y. Feb. 28, 2017) (quoting *Maryland v. King*, 569 U.S. 435, 461 (2013)). Courts have found that fingerprinting arrestees— assuming the arrests are constitutionally valid—does not violate the Fourth Amendment. *See United States v. Kelly*, 55 F.2d 67, 70 (1932) (holding that fingerprinting incident to arrest for either a felony or a misdemeanor infringes no constitutional right); *see also McLaughlin*, 500 U.S. at 58; *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) (holding that "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest"); *United States v. Amerson*, 483 F.3d 73, 86 n.14 (2d Cir. 2007) (citing *Kelly* approvingly and applying its reasoning to DNA identification).

Without showing that his arrest was unlawful, Harris has failed to show that the subsequent fingerprinting and biometric data collection was also unlawful. Accordingly, any Fourth Amendment claim based on fingerprinting and biometric collection is dismissed for failure to state a claim, but with leave to amend.

This claim is also subject to dismissal because Harris has not identified an individual Defendant who was personally involved in this alleged violation, nor has he alleged facts that the fingerprinting or biometric collection was the result of any policy, procedure, or custom of a municipal defendant. *See Tangreti*, 983 F.3d at 618; *Monell*, 436 U.S. at 690.

16

### 4. Excessive Detention Claim

Liberally construed, the complaint asserts a Fourth Amendment claim for excessive detention following arrest without judicial review or judicial determination of probable cause.

The Supreme Court has "held that 48 hours was the presumptive outside limit for a delay in presentment." *Bernshtein v. City of New York*, No. 08 CIV.2906 (AKH), 2010 WL 2541617, at *1 (S.D.N.Y. June 22, 2010) (citing *McLaughlin*, 500 U.S. at 56), *aff'd*, 496 F. App'x 140 (2d Cir. 2012)); *see also Glover v. Onondaga County*, No. 24-630-CV, 2025 WL 1077532, at *4 (2d Cir. Apr. 10, 2025) (summary order) (a judicial determination as to the existence of probable cause is "generally considered prompt if made within 48 hours of the arrest").

But even where the delay is less than 48 hours, a plaintiff can plausibly allege a Fourth Amendment violation by showing that "his or her probable cause determination was delayed unreasonably." *McLaughlin*, 500 U.S. at 56. A delay may be unreasonable if it is "motivated by ill will against the arrested individual, or [constitutes] delay for delay's sake." *Bernshtein*, 2010 WL 2541617, at *1 (quoting *McLaughlin*, 500 U.S. at 56). The Supreme Court, however, has recognized that courts "must allow for a substantial degree of flexibility" and account for "the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer . . ., and other practical realities." *Id.* (quoting *McLaughlin*, 500 U.S. at 56-57).

17

Harris fails to plead facts to support a Fourth Amendment excessive detention claim. While Harris states that Defendants "ignored the constitutional requirements . . . mandating rapid judicial review[,]" he does not allege facts showing that his probable cause determination was delayed unreasonably. Dkt. 1 at ¶ 7. Indeed, as previously noted, Harris does not make clear what happened following his arrest, including a timeline of when Harris was arraigned, he was released, and/or the charges were dismissed. Without this information—including the length of his detention—the Court cannot assess whether there was an unreasonable delay in violation of the Fourth Amendment. Harris also fails to allege a proper individual Defendant who was personally involved in this alleged constitutional violation or how such a violation was the result of a policy, procedure, or custom of the City of Amherst or Erie County. *See Tangreti*, 983 F.3d at 618; *Monell*, 436 U.S. at 690.

This claim is dismissed, with leave to amend.

### D.   Fourteenth Amendment Claims

#### 1.   Due Process Claims

To state a cognizable Section 1983 procedural due process claim a plaintiff must allege facts demonstrating (1) that he possessed a protected liberty or property interest, and (2) that he was deprived of that interest without constitutionally sufficient due process. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *accord Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023).

18

Liberally construing the Complaint, the Court recognizes that Harris likely has a protected property interest in his license. *See generally McGuire*, 142 F. App'x at 4 (finding that "[t]he law recognizes issued driver's licenses to constitute a property interest that cannot be suspended without the procedural due process protection of adequate notice"). Harris further alleges that he did not get "lawful notice" of any of the "failure to answer summons" suspensions. Dkt. 1 at ¶ 4. But he does not provide any information as to the outcome of any of his charges, whether his license was ultimately suspended, and/or what process he received prior to resolution to allow the Court to assess whether he was given sufficient due process.

Moreover, Harris does not allege which, if any, individual Defendant was personally involved in, or how a municipal policy or custom caused, the alleged due process violation. Accordingly, the due process claims based on Harris's license suspicion are dismissed with leave to amend.

As for any due process claims related to his arrest and confinement, those claims are encompassed by his other Section 1983 claims. *See, e.g., Oudekerk v. Lehoisky*, No. 1:24-CV-0311 (AMN/TWD), 2024 WL 1693850, at *6 (N.D.N.Y. Apr. 19, 2024), *report and recommendation adopted*, 2024 WL 3385014 (N.D.N.Y. July 12, 2024) ("Because Plaintiff's due process claims are merely duplicative of his other claims that are explicitly covered by the Fourth Amendment, he cannot bring an additional claim for violation of his right to substantive or procedural due process under the Fourteenth Amendment.").

19

## 2.    Abuse of Process Claim

To state a claim for malicious abuse of process under New York law, a plaintiff must plausibly allege that the defendant "(1) employed regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 223 (S.D.N.Y. 2024). Courts "in the Second Circuit are split on the question of whether probable cause is a complete defense to a claim of abuse of process." *See Rivera v. Jahmi*, 801 F. Supp. 3d 129, 161 (E.D.N.Y. 2025) (collecting cases), *appeal dismissed* (Dec. 3, 2025).

Malicious abuse of criminal process supports liability under Section 1983. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). A "collateral objective is not the same as a malicious motive and must exist beyond or in addition to [the] criminal prosecution, but it is usually characterized by personal animus" and it "may include infliction of economic harm, extortion, blackmail [or] retribution." *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (citation modified).

Harris fails to allege plausibly any of the elements of this claim. Crucially, Harris does not provide facts to suggest that the officers who arrested him had any personal animus or sought a collateral objective such as economic harm, extortion, blackmail, or retribution. Harris further fails to allege a proper individual Defendant who was personally involved in this alleged constitutional violation or

20

how such a violation was the result of a policy, procedure, or custom of the City of Amherst or Erie County. *See Tangreti*, 983 F.3d at 618; *Monell*, 436 U.S. at 690.

Accordingly, this claim is dismissed with leave to amend.

### E.    State Law Claim

Haris alleges that he was fingerprinted in violation of N.Y. Crim. Proc. Law §§ 160.10-160.20 because he was not charged with a fingerprint-eligible crime.

New York criminal procedure law provides that arrestees for felonies or misdemeanors must be fingerprinted. *See* N.Y. Crim. Proc. Law § 160.10(1). The statute further provides in relevant part that a police officer may take fingerprints in other cases if the officer "(a) [i]s unable to ascertain such person's identity; or (b) [r]easonably suspects that the identification given by such person is not accurate." *Id.* § 160.10(2). N.Y. Crim. P. L. § 160.20 provides that, "upon the taking of fingerprints of an arrested person" as described in Section 160.10, "the appropriate police officer or agency must without unnecessary delay forward two copies of such fingerprints to the division of criminal justice services." *Id.* § 160.20.

While Harris alleges that he was not charged with a fingerprint-eligible crime, he also alleges he was charged with aggravated unlicensed operation of a vehicle in the second degree, which is a misdemeanor. *See* N.Y. Veh. & Traf. L. § 511(1)(b). Harris's allegations are inconsistent as to whether he was charged with a misdemeanor—a fingerprint-eligible crime. Harris also does not allege any claim related to the forwarding of his fingerprints as set forth in Section 160.20. Thus,

21

Harris's claim based on a violation of N.Y. Crim. Proc. Law §§ 160.10-160.20 is dismissed.[3]

## CONCLUSION

Because Harris has met the statutory requirements of 28 U.S.C. § 1915(a) and filed the authorization, his request to proceed *in forma pauperis* is granted. For the reasons above, Harris's claims against the Amherst Police Department and Erie County Sheriff's Office are dismissed without leave to amend. Harris's remaining claims are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, but with leave to amend. Harris may file an amended complaint by **May 21, 2026**, in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Harris is advised that an amended complaint **replaces completely** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore,

---

[3] This claim would likely also be time-barred. *Schiller v. City of New York*, No. 04 CIV. 10178 RJS JC, 2008 WL 200021, at *8 (S.D.N.Y. Jan. 23, 2008), *aff'd*, 2009 WL 497580 (S.D.N.Y. Feb. 27, 2009). New York General Municipal Law Section 50-i requires that any action against the Town of Amherst or one of its officers for "personal injury, wrongful death or damage to real or personal property" be "commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50-i. In addition, Harris must comply with Section 50-e, which generally requires that a notice of claim be served upon the municipality within 90 days. N.Y. Gen. Mun. Law § 50-e. Harris attached a purported notice of claim, *see* Dkt. 1 at 4, but it is dated November 26, 2025—well beyond the 90-day deadline. *Schiller*, 2008 WL 200021, at *8 (denying leave to amend to add claims under Section 160.10 because nearly three years had passed and no notices of claim were properly served).

any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

Harris is further advised that he has been granted leave to amend only those claims addressed above. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).

## ORDER

IT HEREBY IS ORDERED that Harris's motion to proceed IFP (Dkt. 2) is granted; and it is further

ORDERED that Harris's claims against the Amherst Police Department and Erie County Sheriff's Office are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim without leave to amend; and it is further

ORDERED that Harris's remaining claims are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, but with leave to amend; and it is further

ORDERED that Harris may file an amended complaint as directed above by no later than **May 21, 2026**; and it is further

ORDERED that the Clerk of the Court shall send to Harris with this order a copy of the original complaint, a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

23

ORDERED that if Harris's does not file an amended complaint by the deadline set forth above, the claims dismissed under 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim will remain dismissed and the Clerk of the Court shall close this case without further order; and it is further

ORDERED that in the event the complaint is dismissed because Harris has failed to file an amended complaint, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Harris must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated:      April 6, 2026
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE